UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VINCENT J. MANDARANO, ) | |
| ) | |
| Plaintiff, ) | CASE NO. C04-2503-RSL-MJB |
| ) | |
| v. ) | REVISED REPORT AND |
| ) | RECOMMENDATION |
| KING COUNTY JAIL, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

At the time of the incidents giving rise to this action, Plaintiff Vincent Mandarano was a pretrial detainee at the King County Jail (KCJ) in Seattle, Washington. Plaintiff brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment constitutional rights when he was injured during a bus ride from the Kent Regional Justice Center (RJC) to the KCJ in downtown Seattle on October 28, 2004. Defendants are: King County Jail, Officer Michael D. Lund, Officer Greg Washburn, and Sergeant Rose Antonius. Plaintiff seeks compensatory and punitive damages and assurance of safe transportation in the future.

Defendants filed a motion for summary judgement which Plaintiff opposed. Upon review of Defendants' summary judgment motion, Plaintiff's opposition thereto,

REPORT AND RECOMMENDATION
PAGE - 1

1  and the balance of the record, the undersigned, Magistrate Judge Monica J. Benton,
2  issued a Report and Recommendation on July 21, 2006, that Defendants' motion for
3  summary judgment should be denied. Dkt. #57. Defendants subsequently presented
4  new evidence to resolve the central factual dispute in the case and moved the Court to
5  reconsider its July 21, 2006 Report and Recommendation. Dkt. #58. This matter was
6  re-referred to the undersigned for a revised Report and Recommendation which
7  considers the new information. Dkt. #60. Based on this new information, the Court
8  recommends on reconsideration that Defendants' motion for summary judgment should
9  be denied.

## II.  FACTUAL BACKGROUND

### A.  Undisputed Facts

In October of 2004, Plaintiff was transported from the RJC to the KCJ on a Bluebird bus with identification number E00350. Dkt. #17, Attach'd Narrative of Plaintiff at 2; Dkt. #58 at 2. Officers Michael Lund and Greg Washburn were assigned to the bus during the transport. Dkt. #59, Affidavit of C. Parker, Exhibit B-4. Plaintiff was chained at the waist, handcuffed to the waist chain, and shackled at the leg. Dkt. #17, Attach'd Narrative of Plaintiff at 2. Plaintiff was the last inmate to board the bus. *Id.* at 3; Dkt. #50, Decl. of M. Lund, Attach'd Officers Report.

### B.  Disputed Facts

Plaintiff claims that the incident took place on October 28, 2004. Dkt. #17, Attach'd Narrative of Plaintiff at 2. However, records presented by Defendants indicate that the date must have been October 27, 2004, the only date on which Plaintiff was transported by bus with both Lund and Washburn as he claims. Dkt. #59, Exhibit B, Decl. of Capt. T. Clark at 3. Plaintiff describes the bus as containing room for a total of

1  39 passengers: 21 passengers in a rear cage, two in an isolation cage, eight in a middle
2  cage, and eight in a front cage. Dkt. #17, Attach'd Narrative of Plaintiff at 3. He claims
3  that because he was the last to board the bus, he was forced to stand in the rear cage,
4  which was already filled beyond capacity with 23 or 24 passengers. *Id*. Defendants
5  assert that the bus has a 41-person seating capacity and that on October 27, 2004, it
6  carried no more than 31 passengers. Dkt. # 59, Exhibit B at 3.

7  Plaintiff claims that at approximately 6:00 a.m. the morning of the incident, he
8  told Officer Lund that he was weak, tired, and on medication. According to Plaintiff,
9  faced with standing room only on the bus, Lund nonetheless told him "everyone must fit,
10 you cannot stay behind." Dkt. #17, Attach'd Narrative of Plaintiff at 2. Lund then
11 slammed the rear cage door and said "don't fall." *Id*. In a report regarding the incident,
12 Lund refutes Plaintiff's account of events, maintaining that he never told Plaintiff to
13 stand, but rather told him specifically to sit in an empty seat in the back of the bus. Dkt.
14 #50, Decl. Of M. Lund, Attach'd Officers Report.

15 Officer Lund states in his report that upon arrival at the KCJ, Plaintiff de-boarded
16 and told Lund that he had fallen during the ride. Dkt. #50, Decl. of M. Lund, Attach'd
17 Officers Report. However, Off. Lund claims that when he discussed the matter with
18 Officer Washburn, Washburn said that all of the inmates were seated when he unlocked
19 and opened the back cage. *Id*. According to Off. Lund, Off. Washburn also said he did
20 not see anyone standing through the bus's camera monitors. *Id*.

21 Officer Lund asserts that after Plaintiff's alleged fall, Plaintiff said he thought he
22 would be fine and Plaintiff did not request to see a nurse until later that day. *Id*. As a
23 result of falling on the bus, Plaintiff claims he sustained a permanent hand injury,
24 damage to his hearing, and possibly nerve damage in his foot. Dkt. #17, Attach'd
25
26 REPORT AND RECOMMENDATION
   PAGE - 3

1 Narrative of Plaintiff at 4. Plaintiff asserts that he has a complete copy of his medical
2 records to support his claim of injury. *Id.* Defendants do not refute or otherwise address
3 Plaintiff's claimed injuries.

### III.  DISCUSSION

5 A.   <u>Summary Judgement Standard</u>

6 Summary judgment is appropriate when "the pleadings, depositions, answers to
7 interrogatories, and admissions on file, together with the affidavits, if any, show that
8 there is no genuine issue as to any material fact and that the moving party is entitled to
9 judgement as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden
10 of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty
11 Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court is required to draw all inferences in
12 the light most favorable to the non-moving party. *Id.* at 248. Genuine disputes are those
13 for which the evidence is such that a "reasonable jury could return a verdict for the non-
14 moving party." *Id.* Material facts are those which might affect the outcome of the suit
15 under governing law. *Id.*

16 For Plaintiff's § 1983 claims to succeed, he must demonstrate that Defendants,
17 acting under color of state law, deprived him of a right guaranteed under the Constitution
18 or federal statutes. *E.g., Ortez v. Washington County*, 88 F.3d 804, 810 (9th Cir. 1996).

19 B.   <u>Eighth Amendment Claim</u>

20 Defendants argue that there is no factual basis to establish a constitutional
21 deprivation. A prison official may be held liable under the Eighth Amendment for acting
22 with "deliberate indifference" to an inmate's health or safety if the official 1) knows that
23 the inmate faces a substantial risk of serious harm and 2) disregards that risk by failing to
24 take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1970). This

subjective standard requires that a prison official both be aware of facts from which he could infer that a substantial risk of serious harm existed, and that he actually draws that inference. *Id*. at 837. If the prison official "should have been aware of the risk, but was not, [he] has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002).

      Here, standing inside a moving vehicle (and therefore without a seatbelt) would obviously pose a substantial risk of serious harm, of which Officer Lund should have been aware. Thus, Plaintiff could establish a violation of his Eighth Amendment rights if he could first prove that Defendants forced him to stand when no seat was available during his transport to the KCJ because the officers would have been aware of the risk and able to draw the proper inference of creating such a risk.

      Defendants have submitted several exhibits in order to demonstrate that Plaintiff was not forced to stand on the bus. Records from the King County Department of Adult and Juvenile Detention establish that on October 27, 2004, 21 passengers, including Plaintiff, were transported from the RJC to the KCJ. Dkt. # 59, Exhibit B-1, Transport/Transfer Form. Captain Todd Clark, the Intake, Transfer, and Release (ITR) Sergeant for the RJC, who had oversight of inmate transports, states that the seating capacity of the bus was 41 persons. *Id.*, Exhibit B at 3, Decl. of Capt. T. Clark. He further avers that no more than ten inmates were added to the October 27 bus run because of housing changes, bringing the maximum number of passengers to 31. *Id.*, Exhibit B at 4.

      However, other than Captain Clark's statement, Defendants did not submit evidence of the bus's seating capacity or of the number of passengers added to the October 27, 2004-bus run due to housing changes. The seating capacity of the bus and

REPORT AND RECOMMENDATION
PAGE - 5

the exact number of inmates transferred to the bus run are material facts that could affect the outcome of this case at trial. More specifically, Plaintiff alleges that the bus was divided into four separate compartments–the front, middle, rear, and isolation cages–and that when he boarded the rear cage, it was already filled beyond its 21-person capacity. Dkt. #17, Attach'd Decl. of Plaintiff at 3. Defendants have not addressed or submitted evidence regarding the capacity of the rear cage or its occupancy on October 27, 2004. Officer Lund's hearsay statement that Officer Washburn did not see anyone standing in the bus through the camera monitor is not sufficient proof that Plaintiff was not forced to stand in the rear cage. Dkt. #50, Decl. of M. Lund, Attach'd Officers Report.

Without documental evidence of the seating capacity of the *rear cage* of the bus and of the number of occupants seated in that cage during the October 27, 2004 run, there is a genuine issue of material fact as to whether Plaintiff was forced to stand in an over filled bus or whether Plaintiff fell on the bus because he opted not to sit in an available seat. Without this evidence, Defendants have not met their burden of demonstrating the absence of a genuine issue of material fact, and their Motion for Summary Judgement should therefore be denied.

## IV.  CONCLUSION

For the foregoing reasons, this Court recommends that Defendants' Motion for Summary Judgment (Dkt. #49) be DENIED. A proposed order accompanies this Report and Recommendation.

DATED this 12th day of September, 2006.

*[signature]*

MONICA J. BENTON
United States Magistrate Judge